# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOUGLAS SCZYGELSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No.: 11-cv-2236 (RMC) |
| | ) |
| U.S. OFFICE OF SPECIAL | ) |
| COUNSEL | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant United States Office of Special Counsel hereby moves this Court to dismiss the above-captioned complaint for failure to state a claim upon which relief can be granted. Alternatively, pursuant to Federal Rule of Civil Procedure 56, Defendant moves this Court for an order granting summary judgment in its favor as the record in this case demonstrates that no genuine issue as to any material fact exists as to the claims being made by Plaintiff Douglas Sczygelski, and Defendant is therefore entitled to judgment as a matter of law.

In support of this motion, Defendant respectfully refers the Court to the accompanying statement of material facts as to which there is no genuine issue and to the accompanying memorandum of points and authorities. Plaintiff should take notice that any factual assertions contained in the documents attached to this Motion may be accepted by the Court as true unless Plaintiff submits her own affidavit or other documentary evidence contradicting the assertions in such documents. *See Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992); LCvR 7(h); Fed. R.

Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported an

opposing party may not rely merely on allegations or denials in its own pleading; rather, its

response must -- by affidavits or as otherwise provided in this rule -- set out specific facts

showing a genuine issue for trial. If the opposing party does not so respond, summary

judgment should, if appropriate, be entered against that party."); see also *Fox v. Strickland*, 837

F.2d 507 (D.C. Cir. 1988).  A draft order reflecting the requested relief is also attached.

     Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Acting Chief, Civil Division


By:     _____/s/_____
LEILA J. LEVI
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 353-4024
leila.levi@usdoj.gov


OF COUNSEL:
Pamela Gault
Office of Special Counsel
202-254-3657
pgault@osc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DOUGLAS SCZYGELSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 11-cv-2236 (RMC) |
| | ) | |
| U.S. OFFICE OF SPECIAL COUNSEL | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE DISPUTE**

Defendant, the United States Office of Special Counsel ("Defendant"), by and through their undersigned counsel, hereby submits this Statement of Material Facts As to Which There Is No Genuine Dispute pursuant to Local Civil Rule 7(h) in support of their Motion for Summary Judgment. This statement is supported by the record in this case.

1. In 2008, the U.S. Customs and Border Protection agency (CBP) terminated Plaintiff during his probationary period from his position as an Agricultural Specialist after learning he sent hundreds of unsolicited letters expressing negative views about African Americans to college students around the country. *See* Complaint, E.C.F. No. 1 at 1; *Sczygelski v. United States Customs and Border Protection Agency*, 419 Fed.Appx. 680 (8th Cir. 2011)(unpublished)(*cert denied*).

2. These letters stated that "blacks, on the average, are less intelligent than whites, due to genetic factors," and that abortion should be legal "because without it the birthrate of African Americans would soar" and that "every black ruled country on Earth is a

cesspool of poverty, violence, and AIDS" and that "black countries will always be full of violence and stupidity." Compliant at 1; *Sczygelski* 419 Fed.Appx at 680.

3. In additional to other statements, Plaintiff further expressed his view that abortion should be legal "because without it the birthrate of African Americans would soar" and that "every black-ruled country on Earth is a cesspool of poverty, violence and AIDS." Complaint at 1; *Sczygelski* 419 Fed.Appx at 680, Report and Recommendation of Magistrate Judge Karen K. Klein, E.C.F. 61 at 2, *Sczygelski v. United States Customs and Border Protection Agency*, 2:08-cv-00075-RRE-KKK (D.N.D.) (Exhibit 22), and September 14, 2009 Order Denying Defendant's Motion to Dismiss and Denying Plaintiff's Motion for Default Judgment, 2009 U.S. LEXIS 93867, p. 2. (Exhibit 24).

4. The letters, in which Plaintiff identified himself as the author, garnered media attention and concerned CBP, in part, because Plaintiff worked with the public at a border crossing for a law enforcement agency.   He checked vehicles entering the U.S. for contraband goods and had the authority to fine people.  Report and Rec., p. 3, September 1, 2010 Memorandum of Law in Support of the Plaintiff's Second Motion for Summary Judgment in *Sczygelski v. U.S. Customs and Border Protection Agency*, Case No. 2:08-cv-75, U.S. District Court for the District of North Dakota, p. 2. (Exhibit 23).

5. Plaintiff challenged his termination through the administrative process and before United States Courts.  Complaint in *Sczygelski v. U.S. Customs and Border Protection Agency*, Case No. 2:08-cv-75, U.S. District Court for the District of North Dakota, p. 3.

6. Plaintiff's complaint filed in the District of North Dakota alleged his termination by CBP violated his First Amendment right to free speech, his termination was illegal because his statements were merely "derogatory " and not invidious, and the termination was

2

disproportionate to the offense.  Complaint in *Sczygelski v. U.S. Customs and Border Protection Agency*, Case No. 2:08-cv-75, U.S. District Court for the District of North Dakota, p. 5.

7.  Plaintiff attempted to file a claim alleging that the termination violated equal protection, but the court did not allow what it considered a second amended complaint.  September 15, 2010 Order Adopting Report and Recommendation and Denying Second Motion for Summary Judgment, p.2 - 3.

8.  Analyzing Plaintiff's claim under the *Pickering* balancing test, Magistrate Judge Karen K. Klein found no violation of Plaintiff's First Amendment rights. Report and Recommendation of Magistrate Judge Karen K. Klein, E.C.F. 61 at 2, *Sczygelski*, 2:08-cv-00075-RRE-KKK (D.N.D.) (Exhibit 22).

9.  Plaintiff appealed that finding to the Eighth Circuit, which affirmed the decision of the district court. *Sczygelski*, 419 Fed.Appx. at 681.

10. Plaintiff petitioned for writ of certiorari with the U.S. Supreme Court which was denied. *Sczygelski v. United States Customs and Border Protection Agency*, 132 S.Ct. 857 (2011).

11. Plaintiff filed his first OSC complaint in May 2008, alleging he had been fired for his political beliefs.  (Exhibit 2).

12. OSC sent Plaintiff a preliminary determination letter explaining that it analyzed Plaintiff's claim as a possible violation of 5 U.S.C. 2302(b)(1), (b)(10), and (b)(12). (Exhibit 2).

3

13. OSC concluded no (b)(1) violation occurred because the information provided did not demonstrate Plaintiff was terminated based upon his affiliation with a political party. (Exhibit 2 at 1).

14. OSC further concluded that Plaintiff did not establish a violation of (b)(10) because although his activity was off duty, the "widespread distribution" of the letters would "have an adverse impact on the efficient functioning of the agency".  (Exhibit 2 at 2).

15. OSC concluded that there was not a violation 5 U.S.C. § 2302(b)(12) because although the letters were of public concern, CBP's interest in promoting efficiency of the public service outweighed Plaintiff's  interests.  (Exhibit 2 at 3-4).

16. Plaintiff responded by challenging OSC's preliminary determination.  (Exhibit 3).

17. OSC closed Plaintiff's first complaint and notified Plaintiff that the closure determination had been reviewed and a "panel agreed that there was nothing improper about the agency's decision to terminate your employment during your probationary period." (Exhibit 4).

18.  Plaintiff's second and third OSC complaints alleged violations because CBP, after a background investigation, rescinded its job offer because of his earlier termination. These complaints repeated some of the same arguments he alleged before and added that CBP violated 5 U.S.C. § 7323 and the First and Fourteenth amendments. OSC considered these allegations under 2302(b)(12) & 2302(b)(10). *See* OSC Complaints 2 and 3 (Exhibit 5); OSC December 13, 2010 letter from Maria S. Davis, CEU Attorney, Re: OSC File No. MA-11-0538. (Exhibit 6).  OSC made preliminary determinations to close the matter finding no prohibited personnel practice (PPP); Plaintiff contested OSC's preliminary determinations.  Sczygelski Letters, December 19, 2010 and March 21, 2011

4

(Exhibits 7, 11, 12).  OSC declined further investigation finding no PPP and noted the

court's finding in *Sczygelski I*. January 20, 2011 Closure Letter, Maria Davis, CEU

Attorney, Re: OSC File No. MA-11-0538, (Exhibit 8) and March 23, 2011 Closure

Letter, Gregory Giacco, CEU Attorney (Exhibit 13) at 1-2.

19.  Plaintiff filed a fourth complaint with OSC about his termination from CBP.  (Exhibit
     14).

20.  OSC closed this complaint because Plaintiff's allegations appeared identical to those
     OSC considered in previous complaints. (Exhibit 15).

21. Plaintiff sought reconsideration. (Exhibit 16).

22. OSC analyzed Plaintiff's request for reconsideration and found that CBP did not violate 5
    U.S.C. § 7323 and that CBP had a sufficient basis to conclude Plaintiff's statements
    violated CBP's Standards of Conduct.  February 17, 2012 letter from Shirine Moazed,
    Chief, Washington Field Office, Investigation and Prosecution Division, Re: OSC File
    No. MA-08-1908 (Exhibit 17).  It found no basis to re-open the Plaintiff's case.

23. Plaintiff filed a fifth complaint with OSC in March 2012 arguing that the termination was
    improper for many reasons, including that it violated 5 U.S.C. § § 7321 and 7323(c), 5
    C.F.R. § section 731.202 and equal protection.  (Exhibit 18).  He also alleged that it
    violated merit system principles and precedent from the Merit Systems Protection Board.
    Plaintiff's OSC Complaint.  (Exhibit 18).  OSC analyzed Plaintiff's argument and sent its
    preliminary determination letter to Plaintiff explaining why it did not consider CBP's
    termination to be a prohibited personnel practice.  April 20, 2012 letter from Maria
    Davis, OSC Attorney to Plaintiff.  (Exhibit 19).  Plaintiff responded to that letter with
    additional arguments.  April 27, 2012 letter from Plaintiff to Maria Davis.  (Exhibit 20).

OSC considered Plaintiff's additional arguments and still did not find evidence of a prohibited personnel practice.  It sent Plaintiff a letter, informing him of its decision to close the matter.  May 18, 2012 letter from Maria Davis to Plaintiff.  (Exhibit 21).

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Acting Chief, Civil Division

By:      ____/s/_____
LEILA J. LEVI
Special Assistant United States Attorney
Judiciary Center Building
555 Fourth St., N.W., E-4825
Washington, D.C. 20530
(202) 353-4024
leila.levi@usdoj.gov

OF COUNSEL:
Pamela Gault
Office of Special Counsel
202-254-3657
pgault@osc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ———————————————— ) | |
| DOUGLAS SCZYGELSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 11-cv-2236 (RMC) |
| ) | |
| U.S. OFFICE OF SPECIAL ) | |
| COUNSEL ) | |
| ) | |
| Defendant. ) | |
| ———————————————— ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

I.      INTRODUCTION

The U.S. Customs and Border Protection agency (CBP) terminated Plaintiff Douglas

Sczygelski during his probationary period, in part, for sending hundreds of unsolicited letters

expressing negative views about African-Americans, after using agency computers to research

where to send the letters.  Plaintiff has filed several actions challenging that termination with the

Equal Employment Opportunity Commission (EEOC), the Merit System Protection Board

(MSPB), the Office of Special Counsel (OSC or Defendant), and in Federal Court.  In fact, OSC

has received five complaints filed by Plaintiff, each of them containing multiple theories, and all

addressing the same issue and underlying facts.  Plaintiff filed for and received reconsideration at

OSC.  Most significantly, Plaintiff has already had his day in federal court.  He filed a complaint

in the United States District Court for the District of North Dakota, alleging that his termination

violated the First Amendment and equal protection clause[1], among other claims.  *See Sczygelski*

_____

[1] The court only accepted Plaintiff's First Amendment claim and did not allow the equal protection claim in a
second amended complaint.  The Court also dismissed claims similar to those presented in this action, finding those

*v. United States Customs and Border Protection Agency*, 2:08-cv-00075-RRE-KKK (D.N.D.).

Because this case is barred by res judicata and collateral estoppel and because the Court is without jurisdiction to review OSC's determinations, OSC respectfully moves pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss this action, or alternatively, pursuant to Fed. R. Civ. P. 56 for summary judgment in its favor.

*Pro se* Plaintiff is advised that if he fails to respond to this motion, the Court may grant this motion and dismiss his case because of the failure to respond. *See Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988) Plaintiff should also take notice that any factual assertions contained in the attachments in support of Defendant's motion may be accepted by the Court as true unless Plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in Defendant's attachments. *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992).

II.     BACKGROUND

A.     History of Plaintiff's Claims

In 2008, CBP terminated Plaintiff during his probationary period from his position as an Agricultural Specialist after learning he sent hundreds of unsolicited letters expressing negative views about African Americans to college students around the country. *See* Complaint, E.C.F. No. 1 at 1; *Sczygelski v. United States Customs and Border Protection Agency*, 419 Fed.Appx. 680 (8th Cir.) (unpublished), *cert denied* 132 S. Ct. 857 (2011). These letters stated, among other things, that "blacks, on the average, are less intelligent than whites, due to genetic factors," that abortion should be legal "because without it the birthrate of African Americans would soar," that "every black ruled country on Earth is a cesspool of poverty, violence, and AIDS" and that

---

claims were precluded by the CSRA. *See Sczygelski v. United States Customs and Border Protection Agency*, 2:08-cv-00075-RRE-KKK (D.N.D.).

"black countries will always be full of violence and stupidity."  Complaint at 1; *Sczygelski* 419

Fed.Appx at 680, Report and Recommendation of Magistrate Judge Karen K. Klein, E.C.F. 61 at

2, *Sczygelski v. United States Customs and Border Protection Agency*, 2:08-cv-00075-RRE-

KKK (D.N.D.) (Exhibit 22), and September 14, 2009 Order Denying Defendant's Motion to

Dismiss and Denying Plaintiff's Motion for Default Judgment, 2009 U.S. LEXIS 93867, p. 2.

(Exhibit 24).  The letters, in which Plaintiff identified himself as the author, garnered media

attention and were a topic of conversation at his workplace.  (Exhibit 22).  CBP was concerned

about his statements, in part, because Plaintiff worked with the public at a border crossing for a

law enforcement agency.  He checked vehicles entering the U.S. for contraband and had the

authority to fine people.  (Exhibit 23).  The CBP Office of Internal Affairs investigated the issue

and found that Plaintiff had made the statements and had used agency computers for personal

use, including researching where to send the letters.  (Exhibit 22).  CBP concluded that Plaintiff

failed to satisfactorily complete his internship and probationary period.  (Exhibit 22).

The Court of Appeals for this Circuit has well established that probationary employment

is ordinarily considered employment at will. *See Piroglu v. Coleman,* 25 F.3d 1098, 1104

(D.C.Cir.1994).[2] This lower standard for termination is notable because Plaintiff was a

probationary employee.

Although ultimately unsuccessful, Plaintiff challenged his termination through the

administrative process and before United States Courts.  (Exhibit 22).  In particular, Plaintiff's

Complaint in the District of North Dakota alleged that his termination violated his First

---

[2] *See also Ring v. Schlesinger*, 502 F.2d 479, 486 (D.C.Cir.1974) (hold that probationary employee did not have "an expectancy of job retention requiring procedural protection under the due process clause"). *See also Hall v. Ford*, 856 F.2d 255, 265 (D.C.Cir.1988) (holding that those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely).

Amendment rights, that the determination was illegal because the statements were merely derogatory and not invidious, and that the termination was disproportionate to the offense. Plaintiff attempted to add an equal protection claim, but the court refused allow the filing of a second amended complaint.  The court dismissed all but the First Amendment claim, finding that the court did not have jurisdiction over the other claims because of the Civil Service Reform Act (CSRA).  *Sczygelski*, 2:08-cv-00075-RRE-KKK (D.N.D.), Complaint, E.C.F. No. 1 at 5. Analyzing Plaintiff's claim under the *Pickering* balancing test, Magistrate Judge Karen K. Klein found no violation of Plaintiff's First Amendment rights.[3]  Report and Recommendation of Magistrate Judge Karen K. Klein, E.C.F. 61 at 2, *Sczygelski v. United States Customs and Border Protection Agency*, 2:08-cv-00075-RRE-KKK (D.N.D.).  The Eighth Circuit affirmed the decision, and the Supreme Court denied Plaintiff's petition for writ of certiorari. *Sczygelski*, 419 Fed.Appx. 680 (8th Cir.)(unpublished), *cert denied,* 132 S.Ct. 857 (2011).

Plaintiff filed the initial complaint in this action on December 14, 2011 and an Amended Complaint on February 21, 2012.  Plaintiff filed a Second Amended Complaint on June 1, 2012, and a Third Amendment Complaint on July 13, 2012.

In the Third Amended Complaint, he makes 21 claims, which fall into three categories. Some allege that OSC violated Plaintiff's right to equal protection, some that OSC's analysis of law is incorrect, and some request the extraordinary remedy of mandamus.  The first and second claims are that OSC violated Plaintiff's right to equal protection and OSC was incorrect in its analysis of 5 U.S.C. § 2301(b)(6) (stating that employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees

---

[3] The Court adopted Judge Klein's Report and Recommendation and entered an Order granting judgment to Defendant.  *Sczygelski v. United States Customs and Border Protection Agency*, 2:08-cv-00075-RRE-KKK (D.N.D. September 15, 2010), E.C.F. No. 69.

should be separated who cannot or will not improve their performance to meet required standards).  The third, fourth, fifth, eleventh, twelfth, and thirteenth claims are that OSC violated his right to equal protection, was incorrect in its analysis, and should be ordered to further investigate Plaintiff's allegations regarding Hatch Act provisions, 5 USC § §7321, 7323(c).  The sixth, seventh, and eighth claims allege that OSC violated Plaintiff's right to equal protection and was incorrect in its analysis of CBP's standards of conduct.  The ninth and tenth claims allege that OSC violated his right to equal protection and was incorrect in its analysis of 5 U.S.C. § 2302(b)(10) (stating, in pertinent part, that any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not discriminate for or against any employee…on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others). The fourteenth, fifteenth, eighteenth, and nineteenth claims seek mandamus to force OSC to further investigate Plaintiff's general claims about equal protection.  The sixteenth and seventeenth claims seek mandamus to force OSC to further explain why certain MSPB precedent does not apply to him.  The twentieth claim alleges that OSC violated Plaintiff's right to equal protection in its analysis of 5 C.F.R. § 734.402[4].  The twenty-first claim is that OSC's interpretation of various statutes amounts to an unconstitutional usurpation of the legislative branch's power  to create statutes.

B. Statutory Framework of the Office of Special Counsel

OSC is an independent investigatory and prosecutorial agency that was created under the

---

[4] 5 C.F.R. § 734.402 states in part, each employee covered under this subpart retains the right to participate in any of the following political activities, as long as such activity is not performed in concert with a political party, partisan political group, or a candidate for partisan political office: **(a)** Express his or her opinion as an individual privately and publicly on political subjects and candidates; **(b)** Display a political picture, sign, sticker, badge, or button…; **(c)** Sign a political petition as an individual.

Civil Service Reform Act (CSRA), Pub. L. No. 95-454, 92 Stat. 111 (1978), as amended.   OSC

is responsible by law, in relevant part, for protecting current and former Federal employees from

prohibited personnel practices (PPPs).  5 U.S.C. § 1212(a)(1).  The OSC does this by

investigating complaints from employees who allege one or more PPPs described at 5 U.S.C. §

2302(b)[5].  OSC "shall investigate [an allegation of a PPP] to the extent necessary to determine

whether there are reasonable grounds to believe that a prohibited personnel practice has

occurred, exists, or is to be taken" (Section 1214(a)(1)(A)).  During the investigation, OSC keeps

the complainant informed of the process and provides the complainant with an opportunity to

provide additional evidence and argument.  Specifically, it provides status updates to the

complainant, and provides a written report containing proposed findings of fact and legal

conclusions at least 10 days before terminating the investigation.  That report gives the

complainant an opportunity to provide additional information for OSC to consider.  After

considering any additional information complainant provided, OSC notifies the complainant of

the results of its  investigation, summarizing the relevant facts ascertained during the

investigation, explaining OSC's reason(s) for terminating the investigation, and responding to

the complainant's written comments.  5 U.S.C. § 1214(a)(1)(C), (a)(1)(D), (a)(2)(A).  When

warranted, OSC may seek corrective and/or disciplinary action for apparent violations from

agencies and the MSPB  5 U.S.C. §§ 1212(a) and 1214(a)(1)(A).

　　　This initial investigation of a PPP complaint is conducted by the agency's Complaints

---

[5] At issue in Plaintiff's OSC complaints were 5 U.S.C. § 2302(b)(1), which prohibits discrimination against employees or applicants for employment on the basis of race, color, religion, sex, national origin, age, handicapping conditions, marital status, or political affiliation, 5 U.S.C. § 2302 (b)(10), which prohibits discrimination for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others, and 5 U.S.C. § 2302(b)(12), which prohibits an employee with personnel action authority from taking or failing to take any other personnel action if doing so would violate any law, rule, or regulation.

Examining Unit (CEU).  If CEU determines that further investigation and/or legal analysis is

necessary after its initial investigation, CEU will refer the PPP allegation(s) to OSC's

Investigation and Prosecution Division (IPD).  Complainants may request that OSC reconsider

the decision to terminate their case.  Although not statutorily mandated, OSC, at its discretion,

will honor such requests and will either reopen the complaint for further investigation or reaffirm

its earlier decision to close the file.  *See*, *generally*, 5 U.S.C. § 1214.

      C. Plaintiff's OSC Complaints

      Plaintiff filed five complaints with the OSC related to his 2008 termination and CBP's

subsequent refusal to hire him for another position in 2010.  Plaintiff filed his first OSC

complaint in May 2008, alleging that he had been fired for his political beliefs. (Exhibit 1)  After

considering Plaintiff's allegation, OSC sent Plaintiff its preliminary determination letter

explaining that it considered Plaintiff's claim as a possible violation of 5 U.S.C. 2302(b)(1),

(b)(10), and (b)(12).  OSC May 22, 2008 Letter, Martha V. Sheth, CEU Attorney, Re: OSC File

No. MA-08-1908 (Exhibit 2).  OSC concluded that no (b)(1) violation occurred because the

information provided did not demonstrate Plaintiff was terminated based upon his affiliation with

a political party.  Exhibit 2 at 1.  It further concluded Plaintiff did not establish a violation of

(b)(10) because although his activity was off duty, the "widespread distribution" of the letters

would "have an adverse impact on the efficient functioning of the agency".  Exhibit 2 at 2.

Finally, OSC concluded that CBP did not violate 5 U.S.C. 2302(b)(12) because while the letters

were of public concern, the CBP's interest in promoting efficiency of the public service

outweighed Plaintiff's  interests.  Exhibit 2 at 3-4.  Plaintiff challenged OSC's preliminary

determination.  Sczygelski May 27, 2008 Letter (Exhibit 3).  After further review, OSC closed

Plaintiff's first complaint and notified Plaintiff that the closure determination had been reviewed

and a "panel agreed that there was nothing improper about the agency's decision to terminate

your employment during your probationary period".  OSC June 16, 2008 Closure Letter, Martha

V. Sheth, CEU Attorney, Re: OSC File No. MA-08-1908, (Exhibit 4).

Plaintiff's second and third complaints alleged violations because CBP, after a

background investigation, rescinded its job offer because of his earlier termination.[6]  These

complaints repeated some of the same arguments he alleged before and added that CBP violated

5 U.S.C. § 7323 and the First and Fourteenth amendments. OSC considered these allegations

under 2302(b)(12) & 2302(b)(10).  *See* OSC Complaints 2 and 3 (Exhibit 5); OSC December 13,

2010 letter from Maria S. Davis, CEU Attorney, Re: OSC File No. MA-11-0538 (Exhibit 6).

OSC made preliminary determinations to close the matter, finding no PPP; Plaintiff contested

OSC's preliminary determinations.  Sczygelski Letters, December 19, 2010 and March 21, 2011

(Exhibits 7, 11, 12).  OSC declined further investigation finding no PPP and noted the court's

finding in *Sczygelski I*.  January 20, 2011 Closure Letter, Maria Davis, CEU Attorney, Re: OSC

File No. MA-11-0538, (Exhibit 8) and March 23, 2011 Closure Letter, Gregory Giacco, CEU

Attorney (Exhibit 13) at 1-2.

Plaintiff filed a fourth complaint with OSC in July 2011, arguing that his 2008

termination from CBP violated 5 U.S.C. § 7323 and his First Amendment rights.  OSC

Complaint (Exhibit 14); *See* July 29, 2011 letter from Ashley Sands, CEU Attorney, Re: OSC

File No. MA-11-3140 (Exhibit 15).  OSC closed this complaint because Plaintiff's allegations

had been addressed in the previous complaints.  OSC explained to Plaintiff the specific legal

theory that had been analyzed before and under what statutory basis each allegation had been

---

[6] It appears that Plaintiff is not challenging these OSC complaints about CBP rescinding his job offer, as that personnel action and OSC's determinations about those complaints are not addressed in Plaintiff's second amended complaint.   See Second Amended Complaint, p. 3- 4.

considered.  It advised Plaintiff that he could seek reconsideration of the decision in the earlier

complaint. *Id*.

Plaintiff sought reconsideration.  Sczygelski Request for Reconsideration of File No.

MA-08-0908 (Exhibit 16).  OSC analyzed Plaintiff's request for reconsideration and found that

CBP did not violate 5 U.S.C. § 7323 and that CBP had a sufficient basis to conclude Plaintiff's

statements violated CBP's Standards of Conduct.  February 17, 2012 letter from Shirine Moazed,

Chief, Washington Field Office, Investigation and Prosecution Division, Re: OSC File No. MA-

08-1908 (Exhibit 17).  It found no basis to re-open the Plaintiff's case.

Plaintiff filed a fifth complaint with OSC in March 2012 arguing that the termination was

improper for many reasons, including that it violated 5 U.S.C. § § 7321 and 7323(c), 5 C.F.R. §

section 731.202 and equal protection.  (Exhibit 18). He also alleged that it violated merit system

principles and precedent from the Merit Systems Protection Board. (Exhibit 18).  OSC analyzed

Plaintiff's argument and sent its preliminary determination letter to Plaintiff explaining why it

did not consider CBP's termination to be a prohibited personnel practice.  (Exhibit 19).  Plaintiff

responded to that letter with additional arguments.  (Exhibit 20).  OSC considered Plaintiff's

additional arguments and still did not find evidence of a prohibited personnel practice.  It sent

Plaintiff a letter, informing him of its decision to close the matter.  (Exhibit 21).

III.     STANDARDS OF REVIEW

A.       Motion to Dismiss For Lack of Jurisdiction

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of

the Federal Rules of Civil Procedure (Fed. R. Civ. P.), the Court must accept as true all material

allegations of the complaint; however, such allegations "will bear closer scrutiny in resolving a

12 (b)(1) motion than in resolving a 12 (b)(6) motion…" *Wilbur v. CIA,*  273 F. Supp. 2d 119,

120 (D.D.C. 2003).  Where a motion to dismiss, however, presents a dispute over the factual

basis for the Court's jurisdiction, the Court "must go beyond the pleadings and resolve any

disputed issues of fact the resolution of which is necessary to a ruling upon the motion to

dismiss." *Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).  "The

Plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a

preponderance of the evidence." *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp. 2d

15, 19 (D.D.C. 1998).

      B.      Motion to Dismiss For Failure To State a Claim/Motion For Summary Judgment

      A motion to dismiss pursuant to F.R.C.P. 12(b)(6) is proper when the Plaintiff fails to

state a claim for which relief can be granted.  "[A] Plaintiff's obligation to provide the 'grounds'

of his entitle[ment] to relief, however, requires more than labels and conclusions....  Factual

allegations must be enough to raise a right of relief above the speculative level." *Hunt v. U.S.*

*Department of Agriculture and OSC*, 2010 WL 3813058 (D.D.C. 2010).

      Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540

(D.C. Cir. 1995).  Where no genuine dispute exists as to any material fact, summary judgment is

required.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To avoid summary

judgment, the Plaintiff must state specific facts or present some objective evidence that would

enable the court to find an entitlement to relief.  *See Matsushita Electric Industrial Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574 (1986).  Moreover, the mere existence of some factual dispute

will not defeat an otherwise properly supported motion for summary judgment; the requirement

is that there be no genuine issue of material fact.  *See Anderson*, 477 U.S. at 247-248.

IV.    ARGUMENT

All of Plaintiff's 21 claims amount to a disagreement with OSC's resolution of his

previous complaints.  He claims that OSC violated his equal protection rights, OSC incorrectly

interpreted law, and that the Court should issue mandamus because of his disagreements with his

termination.  There are many reasons these claims should be dismissed before reaching their

merits.  First and foremost, this action and issues required for its resolution have already been

adjudicated.  Therefore, this action is barred by *res judicata* and *collateral estoppel*.  Moreover,

the CSRA precludes judicial review in this matter.  Additionally, as a prosecutorial agency,

OSC's determinations about its investigations and prosecutions are virtually unreviewable. *See*

*Heckler v. Chaney*, 470 U.S. 821 (1985).  Furthermore, because OSC has fulfilled all of its

statutory obligations, the extraordinary remedy of mandamus is unwarranted in this case.

Finally, if the court were to reach the merits of the claims, the OSC determinations are

correct and legally supportable.

1. Plaintiff's Claims Are Barred By *Res Judicata* and *Collateral Estoppel*

Plaintiff's claims amount to nothing  more than the contention that OSC was wrong when

it found that CBP did not violate laws when it terminated Plaintiff.  However, a federal district

court has already found that the termination did not violate the First Amendment.  This Court's

resolution of Plaintiff's claims requires inquiry into the propriety of CBP's 2008 termination and

that issue has already been adjudicated.  Therefore, Plaintiff's claims are barred by *res judicata*

and *collateral estoppel*.  *Res judicata* (or claim preclusion) bars a second suit if: (1) there has

been prior litigation involving the same claims or cause of action; (2) there is identity of the

parties (or their privies); (3) there has been an earlier final judgment on the merits; and (4) the

earlier final judgment was made by a court of competent jurisdiction. *Porter v. Shah*, 606 F.3d 809, 813-14 (D.C. Cir. 2010).

Putting aside the fact that Plaintiff is precluded from bringing this action because the CSRA precludes relief (as discussed further below), any action against OSC would have to find that OSC was incorrect in its determination that CBP did not commit a prohibited personnel practice when it terminated Plaintiff. Plaintiff now claims that the termination violated equal protection, the Hatch Act and other laws, and that OSC is violating those laws by not agreeing with him. However Plaintiff frames his claims, he is disagreeing with OSC's analysis and speculating as to what OSC might do under different facts. But the underlying issue –the propriety of his termination- has been resolved in previous litigation.

Therefore, all of the requirements of claim preclusion apply. First, Plaintiff previously litigated the same cause of action, if his 2008 CBP termination was improper. *See Sczygelski v. United States Customs and Border Protection Agency*, 419 Fed.Appx. 680 (8th Cir. 2011) (unpublished) (*cert denied*). It does not matter that in this action he casts his disagreements differently from the prior litigation. *Lewis v. DEA*, 777 F. Supp. 2d 151, 161 (D.D.C. 2011) ("(p)laintiff cannot avoid the preclusive effect of the district court's rulings in the prior action by presenting in this action new legal theories for relief."). It is the facts surrounding the transaction or occurrence that constitute the cause of action. *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). *Res judicata* "prevents a party from filing a new civil action which is based on the same operative facts as underlay a previously-litigated civil action." *Morton v. Locke*, 387 F. App'x 1, 1 (D.C. Cir. 2010) (*per curiam*) (*citations omitted*).

Plaintiff's causes of action in the present case are based on the same "transactional" or "operative" facts as the claims litigated in *Sczygelski v. United States Customs and Border*

*Protection Agency*, 2:08-cv-00075-RRE-KKK (D.N.D.  2010) ("*Sczygelski I*").  In assessing whether facts constitute a "transaction," the court must consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stanton v. Dist of Columbia Court of Appeals*, 127 F. 3d 72, 78 (D.C. Cir. 1997).

Whether Plaintiff claims his termination violated the First Amendment (as he did in the previous litigation and his first two complaints in the current litigation), or equal protection (as he does in the Third Amended Complaint in this action and as he attempted to do in the prior litigation) or various other statutes, he is still barred by *res judicata* because the causes of action in the current and prior actions are the same.  This action is barred because it shares the same "nucleus of facts" as the previous action.  *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) and it comprises "part of the transaction, or series of connected transactions, out of which (a prior) action arose."  *Stanton* at 78.

*Res judicata* applies not only to claims that were raised and determined in previous litigation, but also to those a plaintiff could have raised in the previous litigation.  *Lewis* at 161. (citing *Natural Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988)).  There is an even stronger argument to preclude Plaintiff's claim because OSC's decision on Plaintiff's first OSC complaint finding "nothing improper" about his termination predates his filing suit in the District of North Dakota.  *Compare* Exhibit 1 *with Sczygelski I*, Complaint, E.C.F. No. 1. Thus, while not necessary to apply *res judicata*, it is significant that Plaintiff was well aware of OSC's action before his prior case.  He is "bound by a final judgment [in *Sczygelski I*] and may not relitigate any ground for relief which (he) already had the opportunity to litigate even if (he) chose not to exploit that opportunity. . . ." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C.

Cir.1981).  Therefore, even if Plaintiff's current claim is somehow different than the claims he

brought in his previous actions, it is still barred by *res judicata* as he could have litigated it in

*Sczygelski I*, but failed to do so.

This Court's analysis of what constitutes the same cause of action under similar facts

shows that the current action should be barred.  In *Sherwin v. Dep't of the Air Force and MSPB*,

955 F. Supp 140 (D.D.C. 1997), plaintiff had been terminated from the Air Force and filed

several actions over the termination.  In the current action, plaintiff alleged a constitutional

violation for failure to provide him with documents related to his termination.  Even though that

issue had not been raised in his previous suits, the Court found the action was barred by *res

judicata*.  "A final judgment in one action 'bars any further claim based on the same 'nucleus of

facts,' for it is the facts surrounding the transaction or occurrence which operate to constitute the

cause of action, not the legal theory upon which a litigant relies." *Id.* 142 (*internal cites omitted*).

*Accord Rodriguez v. Shulman*, 2012 U.S. Dist. LEXIS 20882 (February 21, 2012) ("Even if

Plaintiffs raise new legal theories regarding the unlawfulness of (Plaintiff's) debarment in this

case, .. those theories are so related to the previously litigated questions that they do not

constitute distinct 'issues.")   Thus, the first requirement of *res judicata* is met.

Second, OSC is in privity with CBP, the defendant in the prior litigation.  "A judgment in

a suit between a party and a representative of the United States is *res judicata* in relitigation of

the same issue between that party and another officer of the government."  *Mervin v. Fed. Trade

Comm'n,* 591 F.2d 821, 830 (D.C. Cir. 1978).  *See Sunshine Anthracite Coal Co. v. Adkins*, 310

U.S. 381, 403 (1940) ("Where a suit binds the United States, it binds its subordinate officials.")

As to the third and fourth requirements, the prior judgment against Plaintiff was final on

the merits and was made by a court of competent jurisdiction.  In *Sczygelski I*, the U.S. District

14

Court for the District of North Dakota granted the Government's motion for summary judgment finding that CBP's interest in the efficient operation of the government agency outweighed Plaintiff's interest in free speech. *Sczygelski I*, Report and Recommendation of Magistrate Judge Karen K. Klein at 2, E.C.F. No. 61. The Eighth Circuit affirmed this decision and the U.S. Supreme Court denied *certiorari. Sczygelski*, 419 Fed.Appx. 680 (8th Cir.) (unpublished), *cert denied* 132 S. Ct. 857 (2011). Therefore, Plaintiff's claims are barred by *res judicata*.

If the Court finds that the entire claim is not barred *by res judicata, collateral estoppel* should bar relitigation of the central issues in the case. "Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, (1980). *Collateral estoppel* (or issue preclusion) applies where: (1) the issue now being raised was contested by the parties and submitted for judicial determination in a prior case; (2) the issue was actually and necessarily determined by a court of competent jurisdiction in the prior case; and (3) preclusion in the latter case must not work a basic unfairness to the party bound by the first determination. *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. U.S.*, 440 U.S. 147, 153-54 (1979). Similar to *res judicata*, *collateral estoppel* applies not only to issues that were raised and adjudicated in previous litigation, but to legal theories and factual assertions related to the subject matter and relevant to the issues previously raised, such that they could have been raised as well. *Hall v. Clinton*, 285 F.3d 74, 81 (D.C. Cir. 2002).

15

As discussed earlier, the issues central to this current action, the propriety of Plaintiff's termination, were adjudicated under his First Amendment claim in *Sczygelski I*. As discussed in below in subheading 4, this court's analysis of the propriety of his termination under an equal protection analysis (and the other statutes he raises) will be the same. Therefore, the first requirement is met.

The second requirement is also met. Specifically, the court in *Sczygelski I* found that although Plaintiff's "speech was a matter of public concern, [CBP] carried its burden of showing that its interest in the efficient operation of the government agency outweighs the Plaintiff's interest in free speech in this matter." *Sczygelski I*, Report and Recommendation of Magistrate Judge Karen K. Klein. The court went on to say that "CBP has shown that Sczygelski's letters were likely to be disruptive because they would undermine the public's perception that CBP enforces the law fairly and without bias." *Id*. at 1-2.

Finally, preclusion will not work a basic unfairness to Plaintiff. He had at least the same, if not more, incentive to litigate the issue in the first action because that action was a direct challenge against his employer that terminated him. *See Yamaha*, 961 F.2d at 254 (citing *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983). And, moreover, there is no risk that the "prior proceedings were seriously defective." *Id*. (citing *Blonder-Tongue Labs, Inc. v. University of Ill. Found.*, 402 U.S.313, 333 (1971)).

Applying these principles, this Court has found subsequent actions barred under similar circumstances. For instance, in *Elliott v. FDIC*, 305 F. Supp. 2d 79 (D.D.C. 2004), the plaintiff had been terminated from the FDIC. In a prior action, the Court had determined that the termination was supported and was not the result of discrimination. In a subsequent action, the court construed the complaint as alleging a Fifth Amendment liberty interest or possibly

defamation because Plaintiff claimed his termination stigmatized him and destroyed his ability to get another job.  The Court found the subsequent action was barred by *res judicata* because "even though Plaintiff asserts that he has a different claim for relief, there remains only one cause of action for purposes of applying the *res judicata* doctrine." *Id*. at 83.  The Court explained that, "even though one group of facts give rise to different claims for relief, upon different theories of recovery, there remains a single cause of action." *Id. (cite omitted)*.  The Court also found that *collateral estoppel* barred the action because, "Plaintiff has already been afforded the opportunity to challenge the bases of his termination…" *Id.* at 84.

"Two cases implicate the same cause of action if they share the same nucleus of facts." *Siwa v. OPM*, 533 F. Supp. 2d 81, 83 (D.D.C. 2008) (*Res judicata* and *collateral estoppel* applied because in prior action, Plaintiff challenged a regulation regarding retirement benefits and in subsequent  action, he claimed OPM violated personnel regulations and discriminated against him.  Current action was barred because underlying issue in both was his retirement benefits.)

Similar to this court's prior application of *res judicata* and *collateral estoppel* to federal employees' various disputes, this action should be barred.

2.  The Court Lacks Subject Matter Jurisdiction Because the CSRA Precludes Judicial Review of OSC's Determinations.

The Court lacks subject matter jurisdiction over Plaintiff's claims because the CSRA precludes judicial review of OSC's determinations.  The CSRA "established a comprehensive system for reviewing personnel actions taken against federal employees." *United States v. Fausto,* 484 U.S. 439, 455 (1988).  In *Fausto*, the Supreme Court found that even when an employee's classification gave him no right to administrative or judicial review under the

17

CSRA, he was still precluded from judicial review on his employment-related claim.  The Court

reasoned that allowing judicial review for employees with no rights under the CSRA would

provide them a more substantial review than other employees had.  *Id.*, at 448-50.

Similarly, the D.C. Circuit has "emphasized, …, that the CSRA is the exclusive avenue

for suit even if Plaintiff cannot prevail in a claim under the CSRA."  *Grosdidier v. Broadcasting

Bd. Of Governors*, 560 F. 3d 495, 497 (D.C. Cir. 2009). *See also Carducci v. Regan*, 714 F.2d

171, 174 (D.C. Cir. 1983) (the CSRA is an "exhaustive remedial scheme" that clearly evidences

Congressional intent not to permit alternative or preexisting remedies).

Courts in this Circuit have consistently applied this well-established authority to OSC's

action.  *See, e.g., Borrell v. United States Int'l Communications Agency*, 682 F.2d 981, 988 (D.C.

Cir. 1982) ("[W]e are unable to conclude from the [CSRA] that Congress intended to provide an

independent judicial remedy to employees [to enforce prohibited personnel practice

provisions].").   As this court has more recently stated:

> …the Civil Service Reform Act of 1978 ("CSRA"), … which governs non-constitutional
> claims brought by federal employees against the United States government or its
> agencies, does not provide for subject matter jurisdiction in the United States district
> courts for review of OSC decisions made pursuant to its authority under the statute.

*Carson v. U.S. Office of Special Counsel*, 563 F.Supp.2d 286, 288 (D.D.C. 2005) (Friedman, J.)

(citing *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005)).  This Court put it simply earlier this

year, "the instant court cannot undertake a substantive or merits based review of OSC conduct."

*Stanton v. Reukauf*, Civ. Action No. 10-cv-633 (RLW) February 6, 2012, *7 *(unpublished)*.

Even though Plaintiff may disagree with OSC's conclusions, recasting his claims as a

constitutional violation does not entitle him to judicial review of OSC's determinations.  It is

clear from the second amended complaint that Plaintiff does not actually plead that OSC failed in

any duty it owes to Plaintiff when it concluded that CBP did not commit a prohibited personnel practice.  Rather, he is challenging OSC's determinations.

This attempt to circumvent the well-established rule that OSC's determinations are not subject to review simply by labeling claims a constitutional violation should fail.  "Indeed, simply alleging 'constitutional violations' does not take claims beyond the remedial provisions of the CSRA."  *Peevy v. Donahue,* 2012 U.S. Dist. LEXIS 29261, March 6, 2012, * 8 *citing Hunt v. Dep't of Agriculture*, 740 F. Supp. 2d 41, 48 (D. D. C. 2010).   Plaintiff here is simply challenging the basis of his removal.  As such, like this court found in *Peevy*, "Plaintiff's constitutional claims appear to be an effort to circumvent the CSRA and obtain renewed reconsideration of the defendant's employment decision."  *Peevy, *18-19.  *See also, Dearsman v. Kurtz*, 516 F. Supp. 1255, 1260 (D.D.C. 1981) (CSRA is the exclusive remedy for all claims, including alleged constitutional violations, arising out of federal employment.)

To avoid merely relitigating his termination against his employer who took the action, Plaintiff adds a new defendant, challenging *OSC's treatment* of *CBP's personnel decision*.  He alleges that OSC committed a constitutional violation because it did not agree with Plaintiff's assertion that his termination was unlawful.  This is not a colorable constitutional claim; he is merely seeking to circumvent the CSRA process.

OSC is not the agency that took a personnel action against Plaintiff; it simply investigated the personnel action.  Given OSC's attenuated link to the personnel action coupled with clear authority that the CSRA does not subject OSC's investigative decisions to judicial review, this court should reject Plaintiff's attempt to seek substantive review simply by labeling a claim a constitutional violation.   Courts have firmly rejected claims that constitutional rights were violated in an investigation or processing a claim when mounted against other

19

investigatory/prosecutorial agencies.  *See, e.g., Smith v. EEOC*, 119  F. 3d 33 (D.C. Cir. 1997)

(no cause of action against the EEOC for challenges to its processing of claims), *Chennareddy v.*

*Dodaro, et. al*., 698 F. Supp. 21 1, 22 (D.D.C. 2009) (no cause of action for constitutional

challenges against the GAO's Personnel Appeal Board, a body analogous to the EEOC for the

processing of claims).

Significantly, this Court has dismissed a substantially similar complaint against OSC.  In

*Koch v. Bloch*, 2006 WL 2460725 (D.D.C . August 24, 2006), Koch filed a complaint with OSC

alleging that his employer had engaged in various prohibited personnel practices. Dissatisfied

with OSC's investigation, Koch then filed suit against OSC and, like here, alleged many claims

under various theories.  Noting that, "the gravamen of Plaintiff's complaint is that OSC failed to

conduct sufficient investigations of his complaint," the court found that the CSRA precluded

judicial review and that the court had no jurisdiction to review OSC's action.  Just as in the

present case, the Plaintiff in *Koch* raised a constitutional claim against OSC, claiming that he had

a property interest in invoking the protection of the laws administered by OSC and that OSC

deprived him of that without due process.  Plaintiff fails to offer any basis for this court to

distinguish *Koch.*

Additionally, the Supreme Court's recent decision in *Elgin v. Dep't of Treasury*, 132

S.Ct. 2126 (2012) militates against permitting Plaintiff to circumvent the CSRA.  In *Elgin,* the

Court found that federal employees could not bring their constitutional claims to federal court.

Instead, they must go through the administrative process codified in the CSRA.  Part of *Elgin's*

rationale is applicable here.  The Supreme Court found that the purpose of the CSRA was to

replace widespread judicial review that "produced wide variations in the kinds of decisions …

issued on the same or similar matters."  *Elgin*  at 10.  To allow employees review in district court

"would seriously undermine" "the CSRA's objective of creating an integrated scheme of review" *Id.* The CSRA's purpose would be undermined by efforts, like Plaintiff's, to circumvent the CSRA.

*Elgin* differs from the present case because Elgin was an employee with appeal rights to the MSPB. But, even if *Elgin* does not control in the present case, it demonstrates the Supreme Court's firm position that the CSRA is exclusive for constitutional claims and that this court should give particular scrutiny to attempts to circumvent the CSRA's structure by recasting CSRA challenges into constitutional claims.

 While the authority that the CSRA precludes judicial review of OSC's decisions is clear and well-established, there is another clear, well-established line of authority that would also limit judicial review. Agencies are entitled to substantial deference in their enforcement decisions. *Heckler v. Chaney*, 470 U.S. 821 (1985). Couched in various ways, Plaintiff's claims are his disagreement with OSC's conclusions and its decision not to bring an enforcement action against CBP. The only relief that Plaintiff could gain in this matter is if OSC took an enforcement action and prevailed before the MSPB. OSC's decision not to prosecute is virtually unreviewable. *New York State Dep't of Law v. FCC*, 984 F.2d 1209 (D.C. Cir. 1993).

Moreover, this Court has recognized this deference extends to agencies' investigations.

In order to exercise its enforcement discretion in an informed, reasonable manner, an agency must investigate possible violations, which may warrant enforcement action. Deciding which claims are facially without merit, which claims merit investigation, and the level of investigation desirable are all enforcement related decisions. Each requires an assessment of how to spend an agency's limited enforcement resources. This is the type of agency decision which holds it is not for a court to second guess. Absent law constraining an agency's discretion in making these decisions, determining the manner in which the agency conducts an investigation is part of its enforcement action committed to agency discretion by law. *Giacobbi v. Office of Federal Contract Compliance Programs, U.S. Dep't of Labor*, 780 F. Supp. 33 (D. D. C. 1992).

21

Plaintiff's claims should be dismissed because the CSRA precludes judicial review.  Yet even if the Court found that it had jurisdiction, the matter would still be dismissed because of the deference owed to the agency's investigative/enforcement decision.

3.   Plaintiff's Mandamus Claims Fail Because OSC Has Performed its Statutory Duties and Plaintiff Cannot Establish He Is Entitled To Relief Under the Mandamus Act.

Because there is no judicial review of OSC's actions, Plaintiff asks for mandamus.  But, mandamus is considered "an extraordinary remedy to be reserved for extraordinary situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988); *Cobell v. Norton*, 334 F.3d 1128, 1137 (D.C. Cir. 2003); *Haneke v. Secretary of Health, Educ. and Welfare*, 535 F.2d 1291, 1296 (D.C. Cir. 1976).  This is not such a case.

To state a claim under the Mandamus Act, a petitioner must show: 1) he has a clear, undisputable right to relief; 2) the agency has a clear duty to act; and 3) there is no other adequate remedy available to him.  *See Cobell*, 334 F.3d at 1137; *see also, Weber*, 209 F.3d at 760; *Carson*, 563 F. Supp. 2d at 288.  Plaintiff has failed to satisfy *any* of these requirements and OSC is therefore entitled to dismissal of his claims seeking mandamus.

Where Plaintiff seeks relief that is within the Defendant's discretion, the Plaintiff has not established a "clear and indisputable" right to relief or a "clearly established duty to act" and mandamus is not appropriate.  *See, e.g., Heckler v. Ringer*, 466 U.S. 602, 616 (1984); *Weber*, 209 F.3d at 760.  The duty must be "so plainly prescribed as to be free from doubt and equivalent to a positive command."  *Consolidated Edison Co. of New York v. Ashcroft*, 286 F. 3d 600, 606 (D.C. Cir. 2002) *citing Wilbur v. U.S.*, 281 U.S. 206, 218-219 (1929).  It is clear that a government official cannot be ordered to perform a discretionary duty.  *Toler v. Gonzales*, 2006 WL 3208664 (D.D.C. 2006), 28 U.S.C. § 1361.

22

Here, OSC has fulfilled all of its statutory duties.  OSC's  clearly established duty is to investigate Prohibited Personnel Practice (PPP) complaints *"to the extent necessary"* to determine whether there are *"reasonable"* grounds to conclude that a PPP has been committed, is being committed, or will be committed.  5 U.S.C. § 1214(a).  OSC performed this investigation of Plaintiff's complaints; it has complied with its statutory obligations. In fact, OSC has gone well beyond its statutory duty- - it has investigated Plaintiff's five complaints with all of their multiple theories, all involving the same underlying facts - his termination. OSC also analyzed Plaintiff's reconsideration request, a function that the statute does not require.  The statute's limiting language clearly confers discretion on OSC to determine the "extent necessary" and "reasonable grounds".[7] To ignore the qualifying language, "to the extent necessary," would render that clause meaningless and that contravenes principles of statutory construction.  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

All that lies beyond performance of this statutory duty is discretionary and therefore beyond the scope of mandamus.  As this Circuit has recognized, "(t)he scope of the investigation … is very much dependent on the agency's interpretation and administration of its authorizing substantive legislation concerning which the agency may enjoy interpretative deference." *Office of Thrift Supervision v. Vinson and Elkins LLP*, 124 F.3d 1304, 1307 (D. C. Cir. 1997).

Perhaps because Plaintiff realizes the clarity of authority that holds that OSC decisions are not subject to judicial review, he attempts to get around this authority by framing his request

---

[7] The U. S. Supreme Court has interpreted part of this same language under another agency's authority and given significant deference to the agency.  In *Huffman v. Western Nuclear*, 486 U.S. 663 (1988), the statute said that the agency "shall" restrict its enrichment of foreign-source uranium "*to the extent necessary* to assure the maintenance of a viable domestic uranium industry."  42 U.S.C. § 2201(v) (*emphasis added*).  The agency had concluded that a uranium industry was not viable and therefore had imposed no restrictions, despite the seeming mandate, that it "shall" impose restrictions.  The Supreme Court found that the phrase "to the extent necessary" gave the agency the discretion to determine "the *amount* of restriction required."  *Id.*, 674 (*emphasis in original*).  Thus, the same language, "to the extent necessary,"  has been interpreted to require no action.

as one of mandamus.  But an analysis of his claims demonstrates he is not alleging that OSC failed to perform a statutory duty.  Rather, his pleadings show he disagrees with OSC's analysis and wants review of its decisions.

For instance, in Claim 1, Plaintiff requests mandamus.  He claims that in its April 20, 2012 letter, OSC found his termination did not violate 5 U.S.C. § 2301(b)(6), but failed to explain its rationale.  Third Amended Complaint, p. 6.  This is completely false.  In that letter, OSC explained that employees can be fired for reasons other than performance, such as misconduct, and provided the statutory basis for its explanation.  Exhibit 19.  In other words, OSC went beyond its statutory duty, clearly showing there is no basis for mandamus. Plaintiff's labeling his claim as one of mandamus to attempt to gain a substantive review to which he is not entitled is a tactic this court has rejected before in *Bright v. Lehman*, 725 F. 2d 788 (D.C. Cir. 1984) in which plaintiff sought mandamus purportedly to compel the agency to conduct a performance appraisal. The court saw through the attempt to get around the CSRA's preclusion and viewed the claim as a petition for a substantive review of the agency's decision regarding Plaintiff's merit pay rating. In fact, plaintiff's claim in that case was similar to what is presented here.  He requested the district court to, "order the defendants to undertake a complete review and update of (the) rating."  The court correctly found that, "(t)his relief is tantamount to second-guessing a discretionary decision of the Navy that fell within the bounds of governing statute and regulations… We do not allow appellant to circumvent the appeals process defined by Congress simply by casting a mandamus label on his claim." *Id.*, at 790.

Thus, Plaintiff has failed to meet his "burden of showing that (his) right to issuance of the writ is clear and indisputable." *Asburn Medical Center v. Department of Health and Human Services,* 686 F. Sup. 2d 55, 71 (D.D.C. 2010).

24

4.  If the Court Reviews the Underlying Claims, There is No Error in OSC's Determinations.

Many of Plaintiff's claims argue that OSC violated Plaintiff's constitutional right to equal protection because it did not agree with his arguments. (Claim 1, OSC's interpretation of 5 U.S.C. § 2301(b)(6); Claim 4, OSC's interpretation of 5 U.S.C. § 7323(c); Claim 9, OSC's interpretation of  5 U.S.C. § 2301(b)(10); Claims 7 and 15 because OSC did not find the CBP violated Plaintiff's right to equal protection; Claim 16 and 17, OSC's interpretation of MSPB law applying to statutorily defined employees; Claim 20, OSC's interpretation of 5 C.F.R § 734.402.)

These claims do not truly state equal protection claims; they are an attempt to circumvent the preclusive effect of the CSRA and they fail for several reasons.  As a threshold matter, they are insufficiently pled because they are based on nothing more than speculation and conjecture as to what CBP and OSC might do if confronted with other misconduct.  *See e.g.* Claim 1, speculates what OSC might do if "non racist" speech was at issue, Claim 14, speculates what OSC and CBP might do if other kinds of speech were at issue. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) *United States v. Dulles,* 94 U.S. App. D.C. 381, 222 F.2d 390, 394 (D.C. Cir. 1954) (stating that Fed. R. Civ. P. Rule 8(a) "requires the pleader to disclose adequate information as the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it"). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1965, 167 L. Ed. 2d 929 (2007) (*citations and footnote omitted*).

If these speculative claims survive the requirements of Rule 8(a), they do not survive summary judgment.  *Ferranti v. Batf*, 177 F. Supp. 2d 41, 48 (D.D.C. 2001) (in FOIA action, finding that speculation that other documents might exist is "insufficient to overcome summary

25

judgment"); *Brown v. Small*, 2007 U.S. Dist. LEXIS 3920, Civil Action No.: 05-1086 (RMU) (D.D.C. 2007) (Speculation that a panel member in a selection case was motivated by discrimination was insufficient to withstand summary judgment in Title VII case).

Plaintiff could not demonstrate an equal protection violation in any of his claims. The initial inquiry in evaluating an equal protection claim is whether a person is similarly situated to those persons who allegedly received favorable treatment. *Women Prisoners of Dist. of Columbia Dep't of Corr. v. Dist. of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996). After showing the unequal treatment, a plaintiff must "show that the requisite relationship between the disparate treatment and the government interest does not exist." *Farmer v. Hawk-Sawyer,* 69 F. Supp. 2d 120, 125 (D.D.C. 1999). A plaintiff is also required to demonstrate discriminatory intent or purpose. *Washington v. Davis,* 426 U.S. 229, 239-40, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976); *Fernandors v. Dist. of Columbia,* 382 F. Supp. 2d 63, 69 (D.D.C. 2005). Plaintiff has not, and can not, make the showing here. Fundamentally, he has not shown a similarly situated person who was treated differently. If he did, he would still have to show there was not a government interest for treating the person differently and that the government acted with discriminatory intent when it treated the person differently.

In this case, Plaintiff's equal protection claims would require the same analysis as his First Amendment claim already litigated in *Sczygelski I. See Community-Service Broad. of Mid-America, Inc. v. FCC*, 593 F.2d 1102 (D.C. Cir. 1978) (en banc) ["the critical questions asked (regarding the equal protection analysis and the analysis of the speech restriction) are the same."]; *Ruggiero v. FCC,*  317 F.3d 239, 247 (D.C. Cir. 2003) (Court rejects equal protection claim using same analysis and for same reasons it rejected First Amendment claim). *Sczygelski I* found that Plaintiff's termination, based in part on his speech, did not violate the First

Amendment.  Because this court would analyze his equal protection claims under a First

Amendment analysis, these claims must similarly be rejected.

The *Pickering* analysis, used by the court in *Sczygelski* I and that would be used here, is

completely dependent on the particular facts of the case.  *See Pickering v. Bd. of Education*, 391

U.S. 563 (1968).  The court must first determine if the speech is a matter of public concern.  If

so, it must weigh the public employer's interest in the efficient operation of the government

agency against the Plaintiff's interest in free speech. Not only has Plaintiff failed to attempt to

show that similarly situated employees were treated differently, he would have a very difficult

time finding one because of the fact-driven analysis required under *Pickering*.  As the U.S.

Supreme Court has recognized in analyzing equal protection claims, "the Constitution does not

require things which are different in fact … to be treated in law as though they were the same."

*Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Finally, even if Plaintiff could find a similarly situated employee who was treated

differently it may not be enough because as the Supreme Court has recognized, "it is not a

requirement of equal protection that all evils of the same genus be eradicated or none at all."

*Railway Express Agency v. New York*, 336 U.S. 106, 110 (1949), as cited in *Henderson v.*

*Kennedy,* 253 F.3d 12, 17-18 (D.C. Cir. 2001) (finding that simply because some vendors were

allowed to sell T-shirts on the Mall, it was not a violation of equal protection to not allow other

vendors to sell).

If considered, Plaintiff's other claims should also be dismissed.  As discussed throughout,

all of Plaintiff's claims actually go to his speech and his employer's ability to address that

speech.  Some of his claims are general speculations about his speech compared with speech that

others might make and how CBP and OSC might address that hypothetical speech.  (Claims 9,

10, 14, 15, 18, 19).  Other claims mention inapplicable statutes or regulations.  For instance,

Plaintiff claims that OSC's analysis of 5 U.S.C. § 2301(b)(6) is incorrect and violates equal

protection because the statute states that employees should be retained on the adequacy of their

performance.  (Claims 1,2).  Clearly, federal agencies can terminate those who engage in

misconduct and for reasons other than performance.  *See e.g.*, 5 U.S.C. Chapter 75 (misconduct)

and *see also Elgin v. Dep't of Treasury,*132 S.Ct. 2126 (2012) (failure to register for selective

service).

Plaintiff finds fault with OSC's analysis of 5 U.S.C. § 7323(c), part of the Hatch Act, 5

U.S.C. § 7321 *et seq.*  (Claims 3, 4, 5, 11). The Hatch Act limits certain political activities, and

authorize others, of certain government employees. *See Briggs v. MSPB,* 331 F.3d 1307, 1309

(C.A. Fed. 2003).    After delineating various *restrictions* on federal employees, 5 U.S.C.

§7323(c) assures that a federal employee "retains the right to vote as he chooses and to express

his opinion on political subjects and candidates." 5 U.S.C. §7323(c).  "Political" is defined in

implementing regulations as pertaining to a candidate for office and Plaintiff's speech does not

meet the definition.  5 C.F.R. § 734.101. More importantly, this provision and other similar

regulations cited by Plaintiff do not upend well-established jurisprudence that limits government

employees' speech (5 U.S.C. §7321 in Claim 12, 13, 5 C.F.R. § 734.402 in Claim 20). [8]

Plaintiff finds fault with OSC's analysis of CBP's standards of conduct.  (Claims 6, 7, 8).

OSC is not authorized to sit as a super personnel board generally reviewing other agencies'

---

[8] There is long-standing precedent that the government, as employer, has greater ability to limit speech than it would to limit its citizens.  With respect to restricting the speech of its employees "the government as employer indeed has far broader powers than does the government as sovereign," *Waters v. Churchill*, 511 U.S. 661, 671 (1994), so that "many of the most fundamental maxims of our First Amendment jurisprudence cannot reasonably be applied to speech by government employees" and "[e]ven something as close to the core of the First Amendment as participation in political campaigns may be prohibited to government employees." *Waters* at 672 (citing *Broadrick v. Oklahoma*, 413 U.S. 601 (1973) and *Civil Service Comm'n v. Letter Carriers*, 413 U.S. 548, (1973)).

personnel decisions to determine if OSC thinks the agency made the best decision. Rather, OSC is authorized to address violations of law and CBP's standards of conduct and its application to Plaintiff were not illegal.

Plaintiff finds fault with OSC's analysis of MSPB precedent. (Claims 16, 17). As a probationary employee, Plaintiff did not meet the statutory definition of "employee" and was not entitled to a hearing before the Board. 5 U.S.C. § § 7511(a)(1), 7513(b). Therefore, the application of the *Douglas* factors or other Board precedent did not apply to him.

Finally, Plaintiff claims that OSC's interpretations of several statutes violate separation of powers. (Claim 21). Quite the contrary. The power to faithfully execute the laws is given to the executive branch and a court's encroachment on that duty could violate separation of powers. *See e.g.*, *Baltimore Gas and Elec. Co. v. FERC*, 252 F. 3d 456 (D. C. Cir. 2001). As the U.S. Supreme Court has said:

"The principal purpose …of the traditional limitations upon mandamus …is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both the expertise and information to resolve. If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved --which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *Sec'y of the Interior v. S. Utah Wilderness Alliance*, 542 US 55, 66-67 (2004).

Therefore, if the Court reviews Plaintiff's claims on the merits, summary judgment should be awarded to the agency because there are no material facts in dispute that could show Plaintiff is entitled to relief.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Defendant's motion to dismiss and motion for summary judgment, and dismiss the case with prejudice.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Acting Chief, Civil Division


By:    _____/s/_____
LEILA J. LEVI
Special Assistant United States Attorney
Judiciary Center Building
555 Fourth St., N.W.
Washington, D.C. 20530
(202) 353-4024


OF COUNSEL:
Pamela Gault
Office of Special Counsel
202-254-3657
pgault@osc.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of August 2012, a true and correct copy of the above Motion To Dismiss Or Alternatively For Summary Judgment was sent to Plaintiff via first class mail at the following address:

DOUGLAS SCZYGELSKI
1508 South 14th Street #12
Grand Forks, ND 58201

_____/s/_____
LEILA J. LEVI
Special Assistant United States Attorney
Judiciary Center Building
555 Fourth St., N.W.
Washington, D.C. 20530
(202) 353-4024

31